**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL MCSHANE SUTTON** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | **NO. 19-cv-2420** |
| | : | |
| **v.** | : | |
| | : | |
| **BRYN MAWR BANK CORPORATION d/b/a** | : | |
| **BRYN MAWR TRUST COMPANY** | : | |
| **Defendant** | : | |
| ———————————————— | : | |

**Plaintiff's Statement of Disputed Facts In Opposition to  Defendant's Statement of  Undisputed Material Facts**

1. Undisputed. Plaintiff objects to the term "self-identify" in terms of his race and sex..

2. Undisputed as Plaintiff testified to this  (Sutton Dep at 107, lines 3-5)

3. Disputed in that the testimony cited does not indicate that he threw out the journal after he had filed suit.  In fact, Plaintiff testified as follows: ·Q.· · · ·When did you destroy your journal? 21· · · ·A.· · · ·I don't recall. (Sutton Dep at 18, lines 20, 21)

   Plaintiff testified that "it was largely about a journal ·2· processing my grief and my struggle with working ·3· and balancing the racial environment, the toxic ·4· environment at work with my own grief and just ·5· trying to be present for my wife as we were trying ·6· to have a child. (Sutton Dep at 23, lines 1-6)

4. Disputed and not material. Plaintiff's testimony as to frequency is as follows.

" ·Q.· · · ·In fact, you spent a lot of your 21· workday e-mailing your wife, didn't you? 22· · · ·A.· · · ·I would occasionally e-mail with my 23· wife at work." (Sutton Dep at 28, lines 20-23)

"·A.· · · ·I would e-mail my wife from time to 11· time.· But, you know, it varied depending on the 12· pace of business." (Sutton Dep at 229, lines 10-12)

"My wife and I would occasionally 15· check in with each other throughout the day. 16· Again, I don't think this is something atypical 17· for spouses to do." (Sutton Dep at 347, lines 14-17)

5.  Undisputed.  Exhibit 18 does not appear to be attached.

6.  Undisputed.

7.  Undisputed.

8.  Undisputed

9.  Undisputed however, Plaintiff testified as follows

    ·Q.· · · ·You had an attendance problem at Bryn 18· Mawr Trust; right? 19· · · ·A.· · · ·I think that is one way that one 20· could characterize that. 21· · · ·Q.· · · ·Well, it's a fair characterization; 22· right? 23· · · ·A.· · · ·I would not describe that as such. I 24· would say that I did have an attendance issue.·1· However, I would say there were mitigating ·2· circumstances for most of those instances.· (Sutton dep at 106, lines 17-24, 107 , lines 1&2)

10.  Undisputed. Further, his signature on the Exhibit at BMT 0031708 indicates agreement to repay any amounts owed.

11. Disputed. With the exception of email going to and from Plaintiff, Exhibit 74 is objected to as being self-serving and incomplete.  Also, Exhibit 267 is objected to as being self-serving and incomplete.

2

With respect to the actual testimony , Plaintiff admitted that he was out Dec 18, Jan 22 to

24 stating that he was out. Further he testified "· And it was at that point when I also 22·

mentioned to my manager and the district manager 23· that I would be willing to take

those dates, 24· particularly the January dates, unpaid·1· understanding that this was not

something that I ·2· could have avoided in taking care of my mother." (Sutton Dep at

107, lines 21-24 , 108, lines 1&2)

With respect to February 7th and February 8, Plaintiff's testimony was · ·Q.· · · ·It notes

that on February 7th you ·5· took a half day of PTO; correct? ·6· · · ·A.· · · ·Yes.· I had a

fertility appointment ·7· with my wife. ·8· · · ·Q.· · · ·And then on February 8th you

called ·9· out sick the next day; correct? 10· · · ·A.· · · ·That is correct. (Sutton Dep at

190, lines 4-10)

12.  Undisputed. See #11

13.  Undisputed

14.  Disputed. Exhibit 74 is objected to as being self-serving and incomplete. Plaintiff's
actual testimony did not include the word stress: "  ·A.· · · ·So, again, my wife and I had
been 10· talking, as a result of everything going on, and 11· when there was no appetite
for Bryn Mawr Trust to 12· allow me to take the time unpaid, my wife said 13· perhaps
you should just resign and focus on your 14· mother and I felt that that would be
something 15· that was premature and I wanted to continue with 16· the job.· So I
obviously did not put my two weeks 17· notice in and I attempted to continue forward."
(Sutton Dep at 191, lines 9-17)

15.  Undisputed

16.  Undisputed

17.  Unsdisputed

3

18. Undisputed

19. Undisputed

20. Undisputed

21. Undisputed.  However, Exhibit 267 is self-serving and incomplete.

Further it should be noted that Laura Biernacki was copied on these emails and that Biernacki in a charge she filed under penalty of perjury has criticized HR and BMT methods specifically with Michael Sutton and generally with respect to the lawsuits filed. Ms. Biernacki filed a charge of discrimination against Defendant after her firing.  In clear reference to these cases against BMT  before this Court Ms. Biernacki contended that she was pressured not to tell the truth . Pertinent particulars of the Charge dated September 1, 2020 and  signed by Ms. Biernacki under penalty of perjury are as follows:

---

-3.     In or about August of 2018, I was interviewed by an attorney for Respondent regarding an employment discrimination claim brought by a terminated employee, Michael Sutton against Respondent. During the interview the attorney was trying to lead me from saying that I believed his medical situation could have been accommodated better.

-4.     In or about September of 2018, I spoke with Nicola Fryer in Human Resources and advised her that I was concerned that I was being pressured to give inaccurate testimony in the employment discrimination case. Exhibit Biernacki 1.

---

22. Undisputed. .  See #21 about Ms. Biernacki

23. Undisputed. .  See #21 about Ms. Biernacki

24. Undisputed.  See #21 about Ms. Biernacki

25. Undisputed. See #21 about Ms. Biernacki

26. Undisputed. Yet Plaintiff explained why:

 "Laura Biernacki had been new to the ·3· branch, or to our district I should say, and had ·4· trained with me I feel like in January and was, ·5· you know, encouraging of me to reach out.· So I -- ·6· I reached out in this manner. ·7· · · ·Q.· · · ·So as a new employee, did you think ·8· it was a good idea to bad-mouth your boss to her ·9· boss? 10· · · ·A.· · · ·No, I do not think it was a wise 11· decision at that moment.· However, I think I was 12· under an extreme amount of stress and strain and I 13· think I was just looking for someone to contact me 14· and -- and give me a sense of what -- what I could 15· do to get things back on a good footing given the 16· absences related to my mother's sickness and how 17· it was impacting my health and my well-being." (Sutton dep sat 116, lines 2-17) See #21 about Ms. Biernacki

27. Undisputed. See #21 about Ms. Biernacki

28.  Undisputed. See #21 about Ms. Biernacki

29. Undisputed. See #21 about Ms. Biernacki

30. Undisputed. See #21 about Ms. Biernacki

31. Undisputed. See #21 about Ms. Biernacki

32. Undisputed. However see #26 and Plaintiff's testimony:

 " ·A.· · · ·To -- to -- to elaborate, again, I 17· put -- I wrote my words are my impression.· So 18· again, I should have used more appropriate 19· language.· I should have perhaps, again, brought 20· this to my district manager in a more appropriate 21· forum. 22· · · · · · · · However, I was feeling very isolated 23· and I was having difficulty on a variety of fronts 24· both personally and interpersonally within the Page 124 ·1· branch.· And was hoping that my district manager ·2· would try and help to assist me." (Sutton Dep at 123, lines 7-24, 124 lines 1&2)

See also #39 below where HR suggests that Plaintiff go over his boss' head.

33. Disputed as exhibit 267 is self-serving and incomplete and there is no testimony.

34. Disputed as exhibit 76 is self-serving and incomplete and there is no testimony on this

35. Undisputed. Yet exhibits 267 and 76 are self serving and incomplete.

36. Disputed as there is no testimony to this effect.  Exhibits 267 and 76 are self serving and incomplete.

37. Undisputed. Exhibits 267 and 76 are self serving and incomplete.

38. Disputed. Plaintiff's testimony was "I was never asked to return it." (Sutton Dep at 209, lines 22&23)

Further, Plaintiff testified :

 A.· · · ·Because, again, I was told to take it ·6· home and to review it and to think about it and to ·7· come up with, I believe, any employee comments ·8· that I wanted to include.· And essentially I kept ·9· reaching out to Nicola Fryer who's written on 10· this, because I wasn't able to speak to her when I 11· was being written up, to understand why this is 12· the first that this is being delivered to me and 13· what this -- what this meant. 14· · · · · · · · And so as a result there was never 15· really any formal understanding of where I stood. 16· As a result of that in April, as I mentioned at 17· least twice today, I reached out on my own 18· volition after my mother had passed and we were 19· into the second quarter to request a meeting with 20· Nancy Pinkowicz as I continued to call Nicola 21· Fryer into March and was unable to get any further 22· sense of is this in effect. ( Sutton Dep at 210, lines 5-22)

Further, Plaintiff testified:

" So it was -- it was very confusing to ·8· me, again, because I was never able to actually ·9· speak to someone at HR what -- where I stood 10· why this was delivered the way it was." (Sutton Dep at 211, lines 7-10)

39.  Undisputed that Exhibit 77 memorializes Plaintiff's contact with HR. Contrary to Defendant's contention that Plaintiff should not go over his superior's head, here HR suggests that he do so: " With respect to this situation, I encourage you to first bring your concerns to you Market Area Manager. I understand that you had previously reached out to Laura regarding some operational concerns."

40.  Undisputed. Plaintiff's testimony was that "sitting here today" he couldn't recall the discrepancies. (Sutton Dep at 218, lines 9 &10)

41. Disputed as there is no testimony cited and  Exhibit 267 is self-serving and incomplete.

42. Undisputed.

43. Disputed as there is no testimony cited and  Exhibit 267 is self-serving and incomplete.

44. Undisputed.

45. Disputed as there is no testimony cited and Exhibit 72 does not speak to the issue. Exhibit

    82 indicates that Plaintiff was setting up logistics for a possible Saturday funeral, not that

    he had so scheduled it.

46. Undisputed but immaterial.

47. Undisputed , however, another employee was available to cover for him (Sutton  Dep at

    363, lines 363)

48. Undisputed as per testimony that Plaintiff was accorded three nonconsecutive days.

    (Sutton Dep at 326, lines 4&5)

49. Undisputed. However, Exhibit 267 is self-serving and incomplete.

50.  Undisputed as per Exhibit 81.

51. Disputed as there is no testimony.

52. Undisputed.

53. Undisputed. The exhibit also contains Plaintiff's statement that "they punished me for the

    fact that my mother passed."

54. Undisputed.

55. Disputed as there is no testimony. Exhibit 267 is self-serving and incomplete.

56. Undisputed.

57. Undisputed.

58. Undisputed as per testimony.

59. Undisputed as per testimony.

60. Disputed. Wife's comment not apparent in Exhibit 229.

61. Disputed as the counseling memo self-serving , incomplete, and not delivered.

   Apparently the drafting continued on April 16 as per Exhibit 86. Exhibit 267 is self-

   serving and incomplete. No testimony was referenced.

62. Disputed as per #61

63. Undisputed.  Plaintiff testified as to this :

   "·Q.· · · ·Let me show you what's been marked as ·5· Exhibit 84.· Do you remember
   talking through this ·6· writeup with Ms. Perez and Ms. Biernacki and then ·7· it being
   withdrawn because you promised to do ·8· better and be more supportive? ·9· · · ·A.· · ·
   ·Based on the notes it says he started 10· to do better and be supportive.· So I think that
   11· would -- the characterization would be that 12· perhaps after my mother died I was
   better able to 13· do my job and perform.· I don't disagree with 14· that." (Sutton dep at
   260, lines 4-14)

   Also see Sutton Dep at 265, lines  16-21: "·A.· · · ·Again, as it lists at the top, it was 17·
   never delivered at the request of the manager, 18· because I was doing better and being
   supportive. 19· So as best I can tell, this was, I guess, 20· something written in March,
   but I had never seen 21· it until today."

64. Undisputed as per testimony.

65. Undisputed.

66. Undisputed

67. Undisputed.

68. Undisputed as per testimony. Further, Plaintiff testified" mentioning me being away for a

   few days without 19· context was something that caused customers to ask 20· some more

questions rather than less.· So that was 21· essentially why I found it an upsetting issue."

(Sutton Dep at 327, lines 18-21)

69. Disputed. Plaintiff's testimony was · · "·What I brought up to her was my 19· continued concerns about the environment in 20· Ardmore and that there were a lot of interpersonal 21· issues that may be related to race, but that I had 22· concerns." ( Sutton Dep at 167, lines 18-22) Further as to concerns raised he testified "·The concerns about interpersonal 18· issues and the potential of race being obviously a 19· big jumping-off point for why there was such 20· conflict within the branch and it was not a good 21· environment.· " (Sutton Dep at 168, lines 17-21)

Exhibits 267 and 86 are self-serving and incomplete.

70.  Disputed. See #69  as well as Plaintiff's testimony :

"·Q.· · · ·What concerns? 17· · · ·A.· · · ·The concerns about interpersonal 18· issues and the potential of race being obviously a 19· big jumping-off point for why there was such 20· conflict within the branch and it was not a good 21· environment.· I had not emphasized that in 22· retrospect as much as I should have. 23· · · ·Q.· · · ·So, in fact, you hadn't brought it up 24· at all; correct?·1· · · ·A.· · · ·I brought it up.· However, I did not ·2· bring it up in hindsight as clearly as I thought I ·3· -- I thought I did enough so that they would at ·4· least look into the situation.· Based on my ·5· experience, no investigation, that I'm aware of, ·6· was conducted." (Sutton Dep at 168, lines 16-24, 169, lines 1-6)

71. Disputed. See #69 and Plaintiff's testimony:

" But I did not feel it appropriate for 16· me to bring the race directly into that 17· conversation because I assumed that Nancy would 18· follow up and get the story directly from the two 19· individuals who were having the primary issues 20· being Alicia and Magdaline Intzes." (Sutton Dep at 301, lines 15-20)

72. Disputed.  Plaintiff's full testimony was:

"·Q.· · · ·Did you use the word "toxic"? 11· · · ·A.· · · ·I've used the word toxic -- 12· · · ·Q.· · · ·No, no.· With Nancy Pinkowicz in that 13· meeting -- 14· · · ·A.· · · ·Again -- 15· · · ·Q.· · · ·-- did you use the word "toxic"? 16· · · ·A.· · · ·Perhaps I did not use the word toxic. 17· I may have couched my language more carefully as, 18· again, in that moment I was more concerned with my 19· job and myself. 20· · · · · · · · It was only until I had been with the 21· bank longer, experienced more, and witnessed some 22· direct commentary that I felt I was in a position 23· to, when asked by Nikkie Fryer the second time, 24· that I finally said, Yes.· If I'm going to be able·1· to look someone in the eye, I need to tell the ·2· truth here. ·3· · · · · · · But when I was meeting with Nancy, I ·4· think the thrust of the meeting was to understand ·5· what in the hell is going on with my situation. ·6· Anything that we discussed I would say with the ·7· branch in Ardmore may have been viewed by Nancy as ·8· an ancillary piece of that conversation, but I ·9· still felt it was worth addressing to someone in 10· human resources. " (Sutton Dep at 303, lines 10-24, 304, lines 1-10)

73.  Disputed. In this instance. Plaintiff did not describe issues he believed his co workers because "I was more concerned with my job and myself." He simply stated that "at that moment  I was more concerned with my job and myself." (Sutton Dep, at 303, lines 18 & 19)  Further, see #72.

74. Disputed as there is no testimony and Exhibit 267 is self-serving and incomplete.

75.  Disputed as there is no testimony and Exhibit 86 is self-serving and incomplete.

76.   Disputed as there is no testimony and Exhibit 267 is self-serving and incomplete.

77.   Disputed that this was an ordinary customer or ordinary situation . Exhibit 231 contains Plaintiff's email "I tried to talk to SM. She didn't care just told me I put all their lives at risk, which is a slight exaggeration to say the least given she was 90 and limited mobility."

Further, Plaintiff testified

"·A.· · · ·Yes.· However, I did not have an 15· option as she was in the doorway.· I -- again, I 16· felt that my options were limited given she was an 17· elderly woman; she needed assistance to walk to 18· begin with, and I felt the lesser of two evils was 19· to walk her up the flight of stairs rather than 20· around the building to the entrance I did not know 21· where, you know, exactly what the stair situation 22· would be. ( Sutton Dep at 320, lines 14-22)

78.   Undisputed . Further, Plaintiff testified ;

" · 11· again, an older woman approached me and would not 12· let me close the door and basically grabbed my arm 13· and asked me to escort her up. · I knew that that was not what I 15· should have done.· I did not have much experience 16· in terms of that building and knowing where to 17· take her, aside from going up into the branch, and 18· I know that it was made -- they made a big deal of 19· it at the moment and so I was very concerned that 20· it would just be an opportunity for me to lose my 21· job.· Though it did not seem to be as egregious as 22· it was, you know, brought about." (Sutton Dep at 319, lines 14-22)

79.  Undisputed to Plaintiff's knowledge ( Sutton Dep at 323, lines 3&4)

80. Undisputed in that Plaintiff had been told as much.

81. Undisputed.

82. Undisputed

83. Disputed as there is no testimony. Exhibit 123 and Exhibit 124 are self-serving and

   incomplete.

84. Disputed as there is no testimony. Exhibit 124and Exhibit 124 are self-serving and
   incomplete.

85. Disputed as there is no testimony. Exhibit 124 and Exhibit 124 are self-serving and
   incomplete.

86. Undisputed.

87. Disputed in that this is unreflected in the email portion of Exhibit 123. Exhibit 124 is self-serving and incomplete.

88. Undisputed. However when asked if it was no more than a five-minute conversation, Plaintiff's testimony was "I can't imagine it was a significant amount of time " (Sutton Dep at 242, lines 3-6)

89. Undisputed as per testimony.

90. Undisputed as per testimony.

Upon seeing the article, Plaintiff's testimony was that "·I think my wife was surprised that at 10· the -- at the fact that the main branch had a lot 11· of the same issues that I appeared to be 12· experiencing in Ardmore as an observer." (Sutton Dep at 63, lines 9-12)

"Alicia McDaniel and I worked very closely together and I witnessed experiences that she had were racist comments, very insensitive comments, very appalling comments, I think, were made." (Sutton Dep at 365, lines 11-15)

91. Undisputed.

92. Undisputed.

93. Disputed as there is no testimony. Exhibit 267 and 119 are self-serving and incomplete. Moreover, Plaintiff's testimony that he complained to superiors about race is as follows:

Q.· · · ·Did you ever discuss racial issues ·2· and tension with either Ms. Perez or ·3· Ms. Biernacki? ·4· · · ·A.· · · ·I did speak with Ms. Perez regarding ·5· tensions between Magdaline and Alicia.· I tried to ·6· address what I felt were some disparities in both ·7· the customers that were being directed to both ·8· individuals and, again, their attitudes toward ·9· each other were -- were obvious to customers, let 10· alone to us as employees, that there was conflict 11· there. 12· · · · · · · · And so I simply was doing what I 13· thought I could do to contact my manager and say, 14· I think this is a situation that you need to get 15· involved in, and my sense is that nothing positive 16· came from it, as within about a month Alicia was 17· moved out of the branch and Magdaline then soon 18· thereafter. (Sutton Dep at 145, lines 1-18)

94. Disputed.. Plaintiff did not need to bring up topics of race or discrimination as Nikkie Fryer of HR did so. (Sutton Dep at 160, line 22)

95. Disputed. See #71.

96. Undisputed.

97. Disputed. Plaintiff's actual testimony was "· And once I -- I initially said I 13· don't want to get involved in this.· I don't want 14· to get involved in this, because my instructions 15· had been from management to really just mind my 16· business and to do my job and again -- 17· · · ·Q.· · · ·And so who had instructed you to mind 18· your business and do your job? 19· · · ·A.· · · ·The instructions I was getting from 20· my manager and my district manager were to focus 21· on the teller line and not to worry about anything 22· else within the branch.· For instance, any racial 23· issues that were in existence, any tension that 24· existed within the branch" Sutton Dep at 144, lines 12-24)

98. Disputed. Plaintiff's testimony to the following question is:

"·Q.· · · ·Tell me your best memory of what 24· happened in that room.·1· · · ·A.· · · ·Again, I was asked have I ever ·2· experienced -- or have I ever witnessed any toxic ·3· environment.· And I said, I really would not like ·4· to get into that; I'm just trying to keep my head ·5· down. ·6· · · · · · · · Then they asked me about it again and ·7· I said I've really been thinking about it and I ·8· said the environment here is toxic.· That is -- at ·9· that point I was essentially cut off from talking 10· about that." (Sutton Dep at 164, lines 23 & 24, 165, lines 1-10)

99. Disputed as there is no testimony and Exhibit 267 is self-serving and incomplete.

100.     Disputed as there is no testimony and Exhibit 267 is self-serving and incomplete.

101.     Undisputed

102.     Undisputed, however Plaintiff said a great deal more about race in the testimony cited.

103.     Disputed. Plaintiff says the opposite:

. ·Q.· · · ·Well, the question is, did you hear ·9· or see anything else? 10· · · ·A.· · · ·Aside from the comments around the 11· household and child care and what Alicia should be 12· doing, I did not hear anything else, but they were 13· very much in terms of a racial context. (Sutton Dep at 45, lines 8-13)

104.       Disputed as Plaintiff testified to  more than a belief that there was discrimination. Clients were directed according to race to Ms. Intzes or Ms. McDaniel by the office manager based on coaching by the district manager.  (Sutton Dep at 151, lines 9-11)  It was Ms. Perez and Ms. Biernacki (Sutton Dep at 152, lines 3-7)

Further " Ms. McDaniel was, again, being given a 14· disproportionally large workload between both the 15· teller line and a lot of people coming in that she 16· would have to service both to open accounts and 17· just to do customer service. 18· · · · · · · · Whereas Ms. Intzes was not held to 19· that same standard.· That to me was very stark, 20· again, having worked in a number of banks, having 21· worked with bankers of a variety of different 22· stripes.· I've never seen the division of 23· clientele done in such a deliberate manner."

105.       Disputed as Plaintiff was characterizing race with respect to the teller line. (Sutton Dep at 149, 15-23) Further see #104

106.       Undisputed but "immaterial"

107.       Undisputed.

108.       Disputed. Plaintiff's testimony was :·

Q.· · · ·-- and then you saw somebody else get 10· credit for opening that account?· You saw both of 11· those things with your own eyes? 12· · · · ·A.· · · ·I did.· In fact, because I would take 13· deposits for opening checking and savings 14· accounts, the customers

would come to me with 15· their deposit slip after finishing with the 16· banker.· They would have their packets with them 17· and I can recall at least two instances, if not 18· three, that Ms. McDaniel's card was there; 19· however, that credit never got transferred. 20· · · ·Q.· · · ·How do you know that credit never got 21· transferred? 22· · · ·A.· · · ·Because I would always ask 23· afterwards," (Sutton Dep at 157, lines 9-23)

109.      Disputed. Plaintiff's actual testimony was :

·Q.· · · ·Did you ever write an e-mail to human 10· resources complaining about what you believed to 11· be discrimination, harassment, or retaliation? 12· · · ·A.· · · ·I did not.· What I did do is I tried 13· to bring it up with the manager who I thought 14· could best parse it and that was not the 15· appropriate way to do that. 16· · · ·Q.· · · ·Did you ever write an e-mail to your 17· manager complaining about what you believed was 18· discrimination, harassment, or retaliation? 19· · · ·A.· · · ·Again, I don't recall specifically 20· e-mailing about the idea of discrimination or 21· harassment.· I definitely do recall a number of 22· e-mails just saying that things were not going 23· well between -- in the branch and that, you know, 24· it would behoove us to try and, you know, again,·1· introduce some civility and some professionalism." (Sutton Dep at 171, lines 9-24, 172 , line 1)

110.      Undisputed

111.      Undisputed

112.      Disputed as there is no testimony and Exhibit 267 is self-serving and incomplete.

113.      Disputed as there is no testimony. Exhibits 267 and 124 are self-serving and incomplete.

114.      Disputed that it was while taking out the trash. The testimony does not include that. Exhibit 267 is self-serving and incomplete.

115.      Disputed as there is no testimony. Exhibit 267 is self-serving and incomplete.

116.      Disputed as there is no testimony. Exhibit 267 is self-serving and incomplete.

117.      Disputed that he was "afraid". Plaintiff's testimony was :

So I remember driving in that morning 19· and being concerned seeing her car in the lot 20· knowing that she was probably working in the Media 21· branch, because I was worried that if the manager 22· or the district manager saw me even just speaking 23· to her that I could be viewed as breaking kind of 24· the Omertà we were told to take, which was·1· Alicia's no longer here; she's still with the bank ·2· but we can't tell you where she is.· If customers ·3· come in with issues or need to get a hold of her, ·4· tell them to e-mail her.· Did not have a phone ·5· number for her." (Sutton Dep at 233, lines 18-24, 234, lines 1-5)

118.    Disputed as Ms. Fryer asked for confirmation of receipt of her email and there is no indication that Plaintiff received the email  (Exhibit 121)

119.    Disputed. Plaintiff testified :" ·A.· · · ·And, again, as I stated earlier, I 16· had been training in the room per Mary Venditti 17· who's the trainer's instructor, so." (Sutton Dep at 240, lines 15-17)

120.    Disputed. Plaintiff testified : ·Q.· · · ·And you claimed that you weren't 16· given clear direction on how to shadow; correct? 17· · · ·A.· · · ·I wasn't.· I was told to go up and 18· figure it out. (Sutton Dep at 238, lines 15-18)

121.    Disputed as there is no testimony. Exhibit 267 is self-serving and incomplete.

122.    Disputed as the testimony cited does not indicate this. Exhibit 267 is self-serving and incomplete.

123.    Disputed as there is no testimony. Exhibit 267 is self-serving and incomplete.

124.    Disputed as there is no testimony. Exhibit 267 is self-serving and incomplete.

125.    Disputed as there is no testimony. Exhibit 267 is self-serving and incomplete.

126.    Disputed as there is no testimony. Exhibit 267 is self-serving and incomplete.

127.     Disputed as 122 is a draft to be sent to Plaintiff. There is no indication that it was

sent. There is no testimony. Disputed as there is no testimony. Exhibit 267 is self-serving

and incomplete. Exhibit 124 is self-serving and incomplete.

128.     Disputed. See #127

129.     Disputed. See #127

130.     Disputed. See #120

131.     Undisputed.

132.     Undisputed

133.     Undisputed only that Sutton was fired on July 24, 2018.

134.     Disputed in that there was more that Plaintiff thought. He testified as follows:


·Q.· · · ·Why were you fired? ·5· · · ·A.· · · ·Again, they, I believe, said ·6· something
about my time.· However, if as we've ·7· discussed a number of times and excuse me for
my ·8· frustration, 11 days prior I had been interviewed ·9· over the phone with regards
to any race issues and 10· any time issues that I had observed in Ardmore and 11· in
other branches. 12· · · · · · · · After being pressed a second time I 13· did admit to the
toxic environment that I had 14· observed in the branch and I did say that from 15· time
to time I do believe there were issues with 16· time. 17· · · · · · · · However, I was not
given an 18· opportunity to elaborate.· No one followed up with 19· me.· The only thing
that I heard as a result of 20· that was they came on that -- the Tuesday 21· following my
training and fired me. 22· · · ·Q.· · · ·And they said that you were being 23· fired for
attendance issues; correct? 24· · · ·A.· · · ·That was what they told me in that·1·
moment.· However, I don't believe that to be the ·2· true reason that I was fired.· Given
they had ·3· taken me for a week and put me in Media to train, ·4· that's an extreme cost
for a company that for ·5· whatever reason was already going to fire me. So ·6· I think
that it does not make a lot of sense." (Sutton Dep at 352, lines 4-24, 353, lines 1-6)

## PLAINTIFF'S  STATEMENT OF DISPUTED FACTS

**I.**      **FACTS PERTAINING TO ALL THE CASES CONSOLIDATED**

1. Defendant proffered a false declaration of its CEO claiming that he had no personal knowledge of the facts alleged.

   -Paragraph 11 of the Declaration states: " All of my knowledge regarding those lawsuits has come to me through discussions with either BMT's general counsel or BMT's outside counsel, and is therefore privileged, or has been reported to me by my subordinates in the ordinary course of business, and is therefore secondhand."

   - Paragraph 15  of the Declaration states:" I was not the decision-maker for any of the decisions of which plaintiffs complain in their lawsuits, nor was I involved in or consulted about those decisions before they occurred.." Plaintiffs subsequently learned that Mr. Leto did have both personal and superior knowledge together with personal participation when it came to the decision that drove Ms. Russo from her employment. Ms. Sanchez threw him under the bus. (Russo Dep at 551, lines 13-19, 552, lines 19-25) (Sanchez Dep at 77, lines 10- 19)

2. Defendant has tainted these proceedings, exerting improper influence and/or efforts at suborning false testimony in  these consolidated cases. as evidenced by an EEOC Charge signed under penalty of perjury by BMT former employee Laura Biernacki which includes the following statements:

-3.     In or about August of 2018, I was interviewed by an attorney for Respondent regarding an employment discrimination claim brought by a terminated employee, Michael Sutton against Respondent. During the interview the attorney was trying to lead me from saying that I believed his medical situation could have been accommodated better.

-4.     In or about September of 2018, I spoke with Nicola Fryer in Human Resources and advised her that I was concerned that I was being pressured to give inaccurate testimony in the employment discrimination case.

(Biernacki 1 & 3)

This is fully consistent with Plaintiff McDaniel's testimony about discussing the

litigation with Ms. Biernacki :

Q.· · Did Laura Biernacki ever discuss these ·6· lawsuits with you? ·7· A.· · Yes. ·8· Q.· · Did she ever make any comment? ·9· A.· · She's made several comments.· She's said 10· that I would not -- I would not win and that this 11· is all for -- for the money and that there was no 12· matter to my claims and that Bryn Mawr Trust has 13· hired the best legal counsel and that I had no 14· chance and that any claim that I made would be shut 15· down and I would be made out to be a liar. 16· Q.· · When did she say this? 17· A.· · She said this -- I don't recall the exact 18· date, but I know in dealings and talkings and even 19· with my leadership, particularly my managers, she's 20· made these statements to other colleagues within 21· the retail department. 22· Q.· · Did she make any comment to you about how 23· she interacted with HR with respect to these 24· lawsuits? 25· A.· · Correct.· She mentioned that HR has -- will·1· have her back, they will protect her at all costs, ·2· because she is being led to say what they want her ·3· to say. ·4· Q.· · What did you take her meaning to be when she ·5· said because she would say what they wanted her to ·6· say? ·7· A.· · Meaning that no matter how many claims I ·8· brought forth, whatever she did, she would be ·9· protected, because she diligently will flat out lie 10· for them.· She believed that she could do and say 11· whatever they want and that HR would back her, 12· because she had close relationships with HR. (McDaniel Dep at  482, lines 5-25, 483, lines 1-12)

3.       Defendant called Ms. Biernacki's charges false before the EEOC. (Biernacki 2)

4.       Defendant then settled with Biernacki by imposing its law firm as her firm. (Biernacki 4)

5.       Defendant has proffered and 'sought to rely upon internal memos introduced as exhibits

purporting to memorialize meetings between Defendant and the plaintiffs. Repeatedly,

Defendants have taken issue , contending that they are deliberate misrepresentations of fact, omitting matters and attributing statements to Plaintiffs which Plaintiffs did not make.

-For example, Plaintiff Russo was asked if the notes reflected what she said her answer was · ·"·No…...· And I found that when I saw the notes of the meetings that we had, it was -- it was missing so much of the information from me the things that I said during · that conversation and certain things were just 13· fabricated.· It was not anything that I said. (Russo Dep at 509 , lines 8-13)

-Further, in response to Biernacki ,Russo testified that there was pressure from the top "Basically that they were getting persuaded to lie or to doctor up the documents…." (Russo Dep at 593, lines 13-16) Further " I -21· feel like it confirms everything that I've been 22· saying from the beginning, that Bryn Mawr Trust 23· has a history of doctoring documents, of 24· pressuring their employees to deny what's going 25· on.· That from the CEO on down, they have a·1· pattern of behavior where they just cover up the ·2· wrongdoings and the wrongdoers and they push ·3· people out when they try to stand up for what's ·4· right. Russo Dep at 595, lines 18-24, 595 lines 1-4)

-Similar testimony about inaccurate internal memos was voiced by Plaintiff Hughes. (Hughes Dep at 39, lines 2-17), (Hughes Dep at 54, lines 10-21)  (Hughes Dep  at 55, lines 16-22)  ·"Q.· · · ·Would you trust anything that came 15· from HR in terms of an internal          memo on a 16· discussion with you? 17· · · ·A.· · · ·Would I trust it? 18· · · ·Q.· · · ·Yeah. 19· · · ·A.· · ·          No. 20· · · ·Q.· · · ·Do you think they falsified 21· documents? 22· · · ·A.· · · ·I think they added in      what they 23· wanted to add in and left out major things.· So in 24· that case, yes." (Hughes Dep at 398, lines 14-24)

-Similar testimony also came from Plaintiff Stevens that when HR interviewed her about Plaintiff Russo's situation that they "must not have put down what I said. (Stevens Dep at 103, lines 12-19) When show a document prepared by HR, Exhibit 218 Plaintiff Stevens testimony is as follows: Q.· · · ·Do you see that it says on June 5th, 15· 2019, you were scheduled to arrive at 8:45 a.m. 16· and you arrived at 8:58 a.m. 17· · · · · · · ·Do you see that? 18· · · ·A.· · · ·I see that. 19· · · ·Q.· · · ·Is that true? 20· · · ·A.· · · ·I do not remember.· Oh, wait a 21· minute.· No.· 6/5/19? 22· · · ·Q.· · · ·Yeah. 23· · · ·A.· · · ·No, that is not true. (Stevens Dep at 273, lines14-23)

-Similar testimony also came from Plaintiff Michael Sutton when questioned over a BMT memo. (Sutton Dep at 157, lines 9-24, 158, lines 1-16)

-Similar testimony also came from Plaintiff McDaniel about Document 117, where Plaintiff explicitly referred to Ms. Russo, however there was no reference to her comment in the document.

6.      For accuracy purposes some Plaintiffs wanted their interviews with Defendant to be recorded and Defendant refused.  (Russo Dep at 546,lines 12-20)

## II  Plaintiff's Facts Pertaining to Sutton Case

7.      When it came to HR's investigation and treatment of him specifically and the other plaintiffs , Laura Biernacki's charge made under penalty of perjury to the EEOC stated as quoted in #3 above:

   3.      In or about August of 2018, I was interviewed by an attorney for Respondent regarding an employment discrimination claim brought by a terminated employee, Michael Sutton against Respondent. During the interview the attorney was trying to lead me from saying that I believed his medical situation could have been accommodated better.

21

4.      In or about September of 2018, I spoke with Nicola Fryer in Human Resources
and advised her that I was concerned that I was being pressured to give inaccurate
testimony in the employment discrimination case.

(Biernacki 1 & 3)

8.      Plaintiff kept a journal when he was working for Defendant "both for psychiatric purposes to deal

with the process of grief, but also to document "a very challenging work environment of race" which was

uncomfortable for him. (Sutton Dep at 18, lines 7-14)  Plaintiff threw out the journal by mistake when he

was cleaning out his car because his son was being born (Sutton Dep at 19 , lines 4&5, 8-11.)

9.      The office to which he was assigned was "not a very cohesive branch. There was a lot of

tension….a lot of racial tension. (Sutton Dep at 33, lines 12-17)  It was based on "interpersonal

racist commentary." (Sutton Dep at 36, lines 22-24)

10.       Plaintiff and Alicia McDaniel worked very closely together and he witnessed racist, very

insensitive and very appalling comments made about her. (Sutton Dep at 365, lines 11-15)

11.      Plaintiff Sutton "heard some commentary by Maggie ·8· Intzes to Alicia (McDaniel)  on

at least four occasions ·9· referring to her children and how it would be 10· better if she was

home with them, that it would 11· really be in their best and in her best interest, 12· and that

from her perspective she didn't 13· understand why Alicia wanted to work.· Things of 14· that

nature that I felt just were not comments 15· that should be made or opinions that should be 16·

voiced about other people's choices in how they 17· have to live their lives. :(Sutton Dep at 39,

Lines 7-17)

12.      Further, as to the Ardmore Branch, Plaintiff Sutton testified:

 9· · · ·A.· · · ·So, again, I would say I observed 10· specifically Magdaline Intzes say a few
comments 11· that were definitely very racist. 12· · · ·Q.· · · ·What? 13· · · ·A.· · · ·Such as
suggesting to Alicia that, 14· because she was Greek, that she had a better 15· background for

education and things of that nature 16· that I felt if I were African-American I would 17· have felt assaulted by some of these comments. 18· · · · · · · · So I can recall talking with my 19· manager, Danielle Llewellyn-Perez, who was 20· African-American, in an effort to have her talk to 21· the two of them and see if we couldn't, again, get 22· to the bottom of this. 23· · · · · · · · · The environment had become such that 24· they could not work well together, obviously, and·1· it had become a weight around the branch's neck ·2· effectively.· (Sutton Dep at 41, lines 9-23, 42, lines 1&2) (Sutton Dep at 43, lines 14-24, 44, lines 1 -17) The comments he heard  were "13· very much in terms of a racial context." (Sutton Dep at 45, line 13)   " but race was certainly a primary motivator as far 24· as I could tell in why they could not work·1· together." (Sutton Dep at 150, lines2 3 &24)

13.     With respect to Plaintiff Sutton's experience at the Bryn Mawr branch, he saw how upset and uncomfortable African American teller Shakeena Wilson was after a comment by Laura Biernacki where Ms. Wilson needed to take a break. ( Sutton Dep at 42, lines 14-24, 43, lines 1-13)

14.      Plaintiff Sutton felt that BMT allowed no recourse when it came to client misbehavior over racism as there were limits on what could be said to a customer. ( Sutton Dep at 47, lines 20-24, 48, lines 1-11)

15.     When Plaintiff saw the DELCO Times article about Plaintiff Russo's experience at the Bryn Mawr Branch,  he and his wife felt that "the main branch had a lot 11· of the same issues that I appeared to be 12· experiencing in Ardmore." (Sutton Dep at 63, lines 8-12)

16.     Plaintiff Sutton felt that there were mitigating circumstances for most of his attendance issues. (Sutton Dep at 107, lines 1&2)

17.     Plaintiff testified as to his definition of retaliation and how he was retaliated against. "And that that is exactly what ·7· retaliation would be, would be using something ·8· that I had experienced or something that I had ·9· observed against me in order to terminate my 10· employment."(Sutton Dep at 140, 18-24, 141, 1-10)

18.     There was only 11 days between Plaintiff Sutton's meeting with HR over racial issues and his termination, sustaining his belief that he was retaliated against.  (Sutton Deposition at 141, lines 13-24 , 142, lines 1-5.) After being sent away for training, Plaintiff returned to his branch to be fired.(Sutton Dep at 143, at line 24, 144, line 1)  At the conclusion of his meeting with HR, Plaintiff anticipated that HR would  look into matters and get back to him. (Sutton Dep at 162, lines 1-17 ) Plaintiff testified further" ·Q.· · · ·And they said that you were being 23· fired for attendance issues; correct? 24· · · ·A.· · · ·That was what they told me in that·1· moment.· However, I don't believe that to be the ·2· true reason that I was fired.· Given they had ·3· taken me for a week and put me in Media to train, ·4· that's an extreme cost for a company that for ·5· whatever reason was already going to fire me.· So ·6· I think that it does not make a lot of sense. (Sutton Dep 351, line 24, 352, 1-6)

19.     Plaintiff Sutton told Alicia McDaniel that he was terrified about dealing with HR and that he noticed the retaliation against her. (McDaniel Dep at 529, lines 8-20)

20.     When asked by HR directly about racial issues, Plaintiff was initially hesitant and did not want to get involved  because he understood that it would terminate his career. However, "However, I also was aware that I ·7· needed to live with myself and that given that ·8· some of the toxic issues that I had witnessed were ·9· something that I could speak to, they were not 10· just rumors, that I felt that I had an obligation 11· knowing that -- again, you know, knowing that I 12· was going to be a father, I didn't want to look 13· back on this and say, I didn't say anything 14· because I was afraid of losing a job…"  Plaintiff did not want to excuse racist behavior when interviewed by Nikkie Fryer of HR. (Sutton Dep at 142, lines 6-20)  Plaintiff had been told by management not to get involved in this and to just "mind my business and to do my job" . This included being told not to get involved in racial issues (Sutton Dep at 144, lines 3-24)   Plaintiff

specifically testified that he reported to HR in July that he believed that he had witnessed discrimination, harassment or retaliation. Instead the only response he got from HR was that he was being fired  (Sutton Dep at 159, line 24, at 160, line 1-17)

21.     Notwithstanding being told not to get involved, did discuss the issues with his manager with respect to the racial issues between Ms. Intzes and Ms. McDaniel as well as the fact that there were disparities based on race as to which employees customers were directed. This conversation took place approximately one month before Ms. McDaniel was transferred.  (Sutton Dep at 145, lines 4-17)

22.     Plaintiff Sutton told Ms. Fryer that the environment was "toxic" specifically vis-à-vis the racial interaction between Intez and McDaniel. (Sutton Dep at 142, lines 22-24, 143, lines 1-7)

23.     Plaintiff testified that there was discrimination with respect to who was on the Teller line and with respect to client assignments as lower income clients were directed to Ms. McDaniel based upon her race. Sutton Dep at 148, lines 2-24, 149, lines 1-5)

24.     Plaintiff testified that Ms. McDaniel was given a "disproportionally large workload" whereas "Ms. Intzes was not held to the same standard."… I've never seen such a division of clientele done in such a deliberate manner. " (Sutton Dep at 151, lines 5-20, 153, lines 12-16)

25.     Plaintiff observed others getting credit for origination that Ms. McDaniel should have gotten.(Sutton Dep at 155, lines5-8)

26.     Management told Sutton and others nothing as to why Alicia McDaniel left Plaintiff's branch. , messaging that inquiring customers were to be told only that she was still with the bank. Further, Plaintiff and others were instructed not to contact Ms. McDaniel with the clear

undertone that there would be trouble for him if he did . (Sutton Dep at 253, lines 22-24, all of 254, and 255, lines 1-11)

27.    Exhibit 84 indicated that Plaintiff started to do better and be supporting. Plaintiff's testimony concerning this was "-- the characterization would be that 12· perhaps after my mother died I was better able to 13· do my job and perform.· I don't disagree with 14· that." (Sutton Dep at 260, lines 4-24) As a result he was not given the writeup.

28.    Plaintiff was told by HR Representative Nancy Pinkowicz not to worry about his past in terms of where he stood with continued tenure at the  Bank(Sutton Dep at 269, lines 12)  He was told to just keep doing what you need to do. (Sutton Dep at 294, line 13-24) He was told by Ms. Pinkowicz that "looking at your 24· file, it seems like things are trending in the·1· right direction.· Keep focused on that. I ·2· wouldn't really worry about this writeup." (Sutton 299, lines 23 & 24)  Ms. Pinkowicz tried to assure him "that in due time everything, you know, was fine." (Sutton Dep at 303, 20-24, 304, line1)

29.    Ms. Biernacki admitted to Alicia McDaniel her willingness to lie for HR with respect to Ms. McDaniel's discrimination claims, and was apparently willing to do so because she believed that HR would "have her back." (Plaintiff's Statement of Disputed Facts at ¶29; McDaniel Dep. at 482:5-25, 483:1-12).

30.    BMT employee Barbara Pope of HR admitted at a manager's meeting at which Frantz Excellent was present that HR is primarily interested in protecting BMT's interests, not the employees. (Excellent Dep. at 50-51).

31.     According the Mr. Excellent, the former manager of the Media branch, BMT's purported

policies with respect to discrimination and harassment are not taken seriously.  (Excellent Dep. at

35:1-8)

<div style="margin-left:40%">

Respectfully Submitted,


**MARK D. SCHWARTZ, ESQUIRE**

By:_____/s/ Mark D. Schwartz_____
        MARK D. SCHWARTZ, ESQUIRE
        PA ID #30527
        300 Sandcastle Drive
        BRYN MAWR, PA 19010
        Telephone & Fax 610 525-5534
        Markschwartz6814@gmail.com


**THE PEARLMAN LAW FIRM, PLLC**

By:_____/s/ Jason L. Pearlman_____
        JASON L. PEARLMAN, ESQUIRE
        PA ID #93879
        TWO BALA PLAZA, SUITE 300
        BALA CYNWYD, PA 19004
        Telephone (610) 660-7793
        jpearlman@pearlmanlawfirm.com


        *Counsel for Plaintiff Michael McShane
        Sutton*

</div>

DATED: May 21, 2021